Stewart, J.
The sole question presented to this court in the present case is whether the percentage payments to applicant by McNeil, which were derived from the contracts of employment between applicant and McNeil, constituted royalties subject to the intangible tax, within the meaning of the provisions of Section 5323, General Code. If those payments were the result of investments they are taxable. If, however, they constituted compensation under a contract of employment they are not taxable.
So far as relevant to the issue presented to us, Section 5323, General Code (115 Ohio Laws, 548; 120 Ohio Laws, 112), then provided:
“The term ‘investments’ as used in this title, includes the following:
a# # *
“Annuities, royalties and other contractual obligations for the periodical payment of money and all con *292 tractual and other incorporeal rights of a pecuniary nature whatsoever from which income is or may be derived, however evidenced, excepting * * * (2) contracts of employment or partnership and salaries, wages, commissions, seniority and other incorporeal lights derived from any such contract * * *.” .
Were the percentage payments to applicant salaries, wages, commissions or other incorporeal rights derived from a contract of employment, or did they constitute taxable royalties?
It is true that in the various contracts between applicant and McNeil the payments were designated as royalties and the board held them to be taxable. However, we are of the opinion that the nature of the payments must be determined from all the circumstances under which they were made rather than by the name by which they were called. As Shakespeare so aptly said, “What’s in a name?”
There can be no question that applicant has been in the exclusive employment of McNeil during all the time with which this case is concerned and that he has been subject at all times to the direction and control by McNeil’s officers in the manner and details of his employment. Such facts are stipulated. Likewise, according to the stipulation, there was no actual intent upon the part of applicant or McNeil to consider the percentage payments to applicant as royalties in the true sense as distinguished from additional compensation.
It seems to us that the foregoing stipulated facts dispose of any uncertainty as to the percentage payments not being royalties or investments as defined in Section 5323, General Code. If they were not true royalties but were additional compensation, they must be considered as commissions or other incorporeal rights derived from a contract of employment. If that is true, the percentage payments come squarely within *293 the exception to investments as defined in the statute.
This court decided the case of French, Exrx., v. Glander, Tax Commr., 146 Ohio St., 225, 65 N. E. (2d), 61, at a time when the exception clause in Section 5323, General Code, contained only the language, “employment and partnership contracts and salaries and wages derived therefrom.” That case concerned one French who was the author of several books and who entered into five separate contracts during a period of 16 years with a publishing company for the publication and sale of books. With one exception the books were copyi'ighted in the publisher’s name and French was to receive certain stated royalties computed upon the number of books sold. French claimed that he was not liable for intangible taxes on the royalties paid him by the publisher, on the ground that they constituted salary or wages under a contract of employment. This court held that such a contract was not a contract of employment and that the sums of money paid French were royalties or income yield from an investment which was subject to intangible personal property tax.
In the opinion in the French case it is stated that the word, “royalty,” is one of varying meanings.
It seems clear that in the French case, as was said in the opinion, there was no employment contract between French and his publisher since the publisher had no right of control over the manner of doing the work by the author.
The French case involved a true royalty which con-. stitutes an investment taxable under the Intangible Tax Act.
In the present case applicant was employed full time to invent and develop machinery under the direction and control of his employer and his compensation under the contract of employment consisted largely of a percentage of the profits made from his developments. *294 Such an arrangement made the percentage compensation more in the nature of a commission than a true royalty and thus came within the exception in the definition of investment.
It is a matter of common knowledge that there are innumerable contracts whereby a salesman receives a flat salary and a percentage of the profits of his employer brought about by the salesman’s efforts, and no one could validly contend that such a percentage was taxable as an investment.
The board seemed to be impressed by the fact that the word, royalty, was used so frequently in the contracts between applicant and McNeil and was concerned with the definition of that word. However, no One involved in this controversy seems to consider the definition of “commissions.”
In the Oxford English Dictionary the word, “commission,” is defined as “a remuneration for services or work done as agent, in the form of a percentage on the amount involved in the transactions; a pro rata remuneration to an agent or factor.”
In the case of Ralston v. Admr. of Kohl, 30 Ohio St., 92, 98, it is stated in the court’s opinion:
“The term ‘commission,’ as here used, legally imports a sum allowed as compensation to a servant, factor, or agent, who manages the affairs of others, in recompense for his services. The right to such allowance may either be the subject of a special contract, or it may rest upon an implied contract to pay quantum meruit. ’ ’
Assuredly the percentage payments to applicant in the present case were a pro rata remuneration to an agent for services or work done as such agent.
It is true that applicant’s percentage remuneration was to continue in the event his employment contract with McNeil ceased and was to be payable to his heirs, executors, or administrators in the event of his death, *295 and that applicant had a right to assign such percentage remuneration. However, no one of those events has occurred, and during all the time with which this controversy is concerned applicant remained in the employ of McNeil under the contracts, and, therefore, the percentage payments made to him were derived from a contract of employment. If in the future those payments should continue after the severance of the employment or the death of applicant, or to an assignee of applicant, a different question might be presented, but that question is not before us now.
We hold that the percentage payments to applicant constituted commissions or other incorporeal rights derived from a contract of employment, and, therefore, did not constitute investments. Consequently, the decision of the Board of Tax Appeals must be and is reversed.

Decision reversed.

Weygandt, C. J., Zimmerman, Middleton, Taft, Matthias and Hart, JJ., concur.